IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN | : | CIVIL ACTION |
| FINANCIAL SERVICES, INC. | : | |
| | : | |
| v. | : | No. 10-1887 |
| | : | |
| NEW LIFE ANOINTED | : | |
| MINISTRIES INTERNATIONAL, INC. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                 June 30, 2011

Plaintiff De Lage Landen Financial Services, Inc. (DLL) sues New Life Anointed Ministries International, Inc. (New Life) for breaching an agreement for the lease of computer equipment. New Life asks this Court to dismiss this case for lack of personal jurisdiction. Because New Life has not purposefully established sufficient minimum contacts with Pennsylvania to support the exercise of personal jurisdiction, the motion will be granted.

**FACTS**[1]

New Life is a non-denominational worship center[2] organized as a Delaware corporation and located in Woodbridge, Virginia. New Life does not maintain an office in Pennsylvania, and no employee of New Life has ever traveled to Pennsylvania on business. Def.'s Mot. to Dismiss Ex. D ¶¶ 4, 6. The church's only relationship with the Commonwealth appears to be the fact that its

---

[1] On a motion to dismiss for lack of personal jurisdiction, a district court accepts the plaintiff's allegations as true and construes disputed facts in the plaintiff's favor. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Because the burden is on the plaintiff to prove the facts establishing personal jurisdiction, once a defendant raises the defense of lack of personal jurisdiction, the plaintiff "must respond with actual proofs, not mere allegations." *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (citation omitted).

[2] *See* New Life Anointed Ministries International Home Page, http://www.thelifedc.org/site/index.php?q=About (last visited June 30, 2011).

senior pastor provides "spiritual covering" for churches in Pennsylvania, among other states. Pl.'s Resp. to Mot. to Dismiss Ex. A.

In 2007, New Life sought to acquire certain computer software, equipment, and support services from ACI Solutions (ACI), a company located in Virginia, for use at New Life's church in Virginia. ACI suggested Cisco, a Nevada corporation with offices in Wayne, Pennsylvania, as an available source of funding for the purchase. On June 12, 2007, New Life executed a "Master Lease Agreement" (Lease) with Cisco, establishing the general terms and conditions under which Cisco would purchase the software, equipment, and services—referred to collectively in the Lease as a "System"—from ACI and lease it to New Life. Although the parties to the Lease were New Life and Cisco, New Life did not engage in any negotiations with Cisco. Rather, all of New Life's communications about the Lease were with ACI. New Life received the Lease from ACI, signed it, and then returned the signed Lease to ACI—all in Virginia. Def.'s Mot. to Dismiss Ex. D ¶¶ 7-9.

The Lease provided it would "be binding and effective when accepted by [Cisco] at its corporate office in Wayne, Pennsylvania," Compl. Ex. A ¶ 24, and directed that all payments and notices thereunder be sent to Cisco at the Wayne address, *id.* ¶¶ 2, 21. The Lease also included a choice of law clause specifying it would be governed by New York law, and reflecting the parties' agreement to submit to the non-exclusive jurisdiction of the courts of New York County, New York, and the New York federal courts "for the purpose of any action or proceeding arising out of or relating to [the Lease]." *Id.* ¶ 24.

On October 16, 2007, New Life purportedly executed a Progress Payment Addendum (Addendum) to the Lease in which Cisco agreed to make interim payments to ACI during the period of time when portions of the System were being delivered to New Life and prior to New Life's

acceptance of the entire System, and New Life agreed to pay Cisco interest on these "progress payments."[3] The Addendum also provided that (1) any progress payments advanced by Cisco would be New Life's obligation, and (2) if for any reason the Lease did not commence within 150 days after the first progress payment was made, Cisco did not accept the Lease, or New Life failed to make payments under the Addendum, then New Life would pay Cisco on demand "an amount equal to the sum of all Progress Payments plus Progress Rent through the date of payment." Compl. Ex. B ¶ 5.

On September 12, 2007, Cisco assigned all of its rights, title, and interest in the Lease to DLL. Pl.'s Resp. to Mot. to Dismiss Ex. E. According to the Complaint, DLL made progress payments of $85,976.80 and $51,586.08 to ACI on September 12, 2007, and October 23, 2007, respectively, and interest on these payments began accruing on January 10, 2008. Compl. ¶ 9.

On April 27, 2009, DLL notified New Life that New Life had defaulted under the Addendum because the Lease had not commenced within 150 days of the first progress payment and DLL did not accept the Lease. Def.'s Mot. to Dismiss Ex. B. DLL demanded immediate payment of the two progress payments it had made, plus interest, *id.*, but New Life refused to pay. In April 2010, DLL filed the instant Complaint, asserting claims against New Life for breach of contract and promissory estoppel. The case was designated for compulsory arbitration pursuant to Local Civil Rule 53.2,[4]

---

[3] The affidavit submitted by New Life in support of its motion to dismiss does not specifically address the circumstances surrounding New Life's execution of the Addendum, and New Life disputes the authenticity of its Project Manager's purported signature on the Addendum. At oral argument, DLL's counsel conceded there were no negotiations or communications between Cisco and New Life regarding either the Lease or the Addendum.

[4] Under Local Civil Rule 53.2(3)(A), subject to certain exceptions not applicable here, the Clerk of Court is required to "designate and process for compulsory arbitration all civil cases . . . wherein money damages only are being sought in an amount not in excess of $150,000.00 exclusive of interest and costs."

3

and an arbitration hearing was scheduled for October 6, 2010. New Life did not appear at the October 6 hearing, having advised the arbitrators of its defense based on lack of personal jurisdiction. Def.'s Mot. to Dismiss ¶ 23. The same day, the arbitrators issued an arbitration award, finding in favor of New Life and against DLL.[5] *Id.* Ex. E. DLL thereafter requested a trial de novo pursuant to Local Civil Rule 53.2(7), and trial was scheduled for November 18, 2011. In response, New Life filed the instant motion to dismiss the case for lack of personal jurisdiction. This Court heard oral argument on the motion on the scheduled trial date and took the motion under advisement. With the parties' consent, and without waiver of New Life's personal jurisdiction objection, the Court then proceeded to take testimony directed at the merits to avoid a second hearing in the event the motion to dismiss was denied.

**DISCUSSION**

"Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). In the absence of an evidentiary hearing, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* (citation omitted). To meet this burden, a plaintiff may not rely "on the bare pleadings alone," but must respond with sworn affidavits or other competent evidence. *Patterson*, 893 F.2d at 603-04 (citation omitted); *see also Metcalfe*, 566 F.3d at 330-31.

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor,* 496 F.3d at 316. The Pennsylvania long-arm statute authorizes the exercise of personal jurisdiction "to the fullest extent

---

[5] According to DLL, the arbitration panel did not render an opinion on New Life's personal jurisdiction objection, but simply entered a consent order in language proposed by DLL's counsel. Pl.'s Resp. to Mot. to Dismiss ¶ 23.

allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). Therefore, to decide whether personal jurisdiction exists, this Court must determine whether New Life "has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Although personal jurisdiction may be exercised under two distinct theories—general jurisdiction and specific jurisdiction—DLL invokes only specific jurisdiction here.[6] For specific jurisdiction to exist: (1) "the defendant must have purposefully directed [its] activities at the forum"; (2) "the litigation must arise out of or relate to at least one of those activities"; and (3) the exercise of jurisdiction must "otherwise comport[] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotation marks and citations omitted). "The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (stating an individual's contract with an out-of-state party alone does not "automatically establish sufficient minimum contacts in the other party's home forum"). Rather, because a contract is "ordinarily but an intermediate step

---

[6] At oral argument, DLL suggested New Life's provision of "spiritual covering" for churches in Pennsylvania supports general jurisdiction. According to New Life's web site, such spiritual covering is provided by New Life's pastor and not by the church itself. Pl.'s Opp'n to Mot. to Dismiss Ex. A. Moreover, there is nothing in the record to suggest such services involved the pastor's travel to Pennsylvania. To the contrary, New Life Project Manager Kylisa Harris states "[n]o employee of New Life has ever traveled to Pennsylvania on business." Def.'s Mot. to Dismiss Ex. D ¶ 6. There is thus no basis on which to conclude the provision of spiritual covering amounts to the kind of "continuous and systematic" contacts with Pennsylvania necessary to support general jurisdiction. *See Metcalfe*, 566 F.3d at 334 ("A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action.").

serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," the court must consider such factors as the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479 (internal quotation marks and citations omitted).

DLL argues New Life purposefully established the requisite minimum contacts in Pennsylvania by obtaining financing from Cisco in Pennsylvania pursuant to an agreement which was to become effective when accepted by Cisco in Pennsylvania, and which required payments to be made to Cisco in Pennsylvania. These contacts alone, however, are not dispositive. Rather, in determining whether a nonresident's financing agreement with a forum resident can support personal jurisdiction, the Third Circuit and Pennsylvania courts have evaluated parties' prior negotiations and actual course of dealing, including whether the nonresident solicited a business relationship with the Pennsylvania resident or dealt with the Pennsylvania resident directly.

In *Fidelity Leasing, Inc. v. Limestone County Board of Education*, 758 A.2d 1207 (Pa. Super. Ct. 2000), for example, the court held a Pennsylvania court lacked personal jurisdiction over an Alabama school board that acquired photocopiers from an Alabama vendor with financing from a Pennsylvania company in an action by the Pennsylvania company for breach of its lease agreements with the school district. The school district had negotiated with the Alabama vendor to obtain copiers for use at its schools in Alabama, and the vendor contacted the Pennsylvania company to obtain financing for the school district. *Id.* at 1209, 1211-12. The school district signed the lease agreements in Alabama and returned them to the vendor, which sent them to Pennsylvania. *Id.* at 1212. Throughout, the school district had no direct contact with the financing company. Although

6

the lease agreements provided (1) they were entered into in Pennsylvania, where they were accepted by the lessor, (2) they were governed by Pennsylvania law, and (3) payments thereunder were to be made to the lessor in Pennsylvania, the Superior Court found these connections "lacked the substantiality necessary to justify the existence of *in personam* jurisdiction over [the school district]." *Id.*

In so holding, the Superior Court distinguished its prior decision in *General Motors Acceptance Corp. v. Keller*, 737 A.2d 279 (Pa. Super. Ct. 1999), in which it had held a Florida defendant who purchased cars from a Pennsylvania dealership on three separate occasions, obtaining financing from a Pennsylvania company each time, was subject to personal jurisdiction in Pennsylvania in a suit by the financing company for breach of the financing agreement. In *Keller*, the Florida defendant had dealt directly with the Pennsylvania financing company[7] and had done so during two prior transactions. The Superior Court found these contacts, coupled with the defendant's submission of payments to the financing company in Pennsylvania, were sufficient to support the exercise of personal jurisdiction in Pennsylvania. *Id.* at 282. In *Fidelity Leasing*, in contrast, the Superior Court found the school district's contacts with Pennsylvania were "more tenuous," as the vendor, not the school district, had initiated contact with the financing company, with which the school district had had no prior dealings. *Fidelity Leasing*, 758 A.2d at 1213. In these circumstances, the school district's "payments to a Pennsylvania company alone were not sufficient to establish that [the school district] purposefully availed itself to Pennsylvania's

---

[7] Although the Superior Court noted the Florida defendant's initial contact with the financing company may have been instigated by the Pennsylvania dealership, the defendant submitted his credit application and subsequent payments to the financing company in Pennsylvania. *Keller*, 737 F.2d at 282.

jurisdiction." *Id.*

The Third Circuit has also given weight to whether a nonresident directly solicited a business relationship with a forum resident in determining whether an agreement to repay money to a forum resident supports personal jurisdiction over a nonresident. In *Farino*, the Third Circuit upheld a Pennsylvania district court's exercise of personal jurisdiction over nonresident defendants who sought financing from a Pennsylvania bank as limited partners in Virginia limited partnerships, and offered their personal guaranties to induce the bank to provide the loans, sending their personal financial information to the bank in Pennsylvania. 960 F.2d at 1223. When the partnerships were unable to make payments due on the loans, the limited partners negotiated a series of extensions from the bank, forwarding updated personal financial information to induce it to grant the extensions. The partnerships ultimately defaulted, and the bank thereafter sued the limited partners for breach of the guaranty and surety agreements each had executed. In concluding the district court had personal jurisdiction over the limited partners, the Third Circuit held the defendants had purposefully availed themselves of the privilege of conducting business in Pennsylvania by seeking out financing from a Pennsylvania bank, notwithstanding their lack of physical contact with or presence in Pennsylvania. The court emphasized that the bank "did not approach the borrowers seeking to lend money nor did [the bank] initially request the guaranties. It was the defendants who approached [the bank] and through this contact established a business relationship with a Pennsylvania entity." *Id.* at 1223.

The court also relied on the limited partners' solicitation of business from the bank to distinguish its prior decision in *Dollar Savings Bank v. First Security Bank of Utah, N.A.*, 746 F.2d 208, 214 (3d Cir. 1984), in which it held that the fact a Utah bank had obtained a loan from a

8

Pennsylvania bank and was required to repay the loan in Pennsylvania was not enough to support personal jurisdiction, where the Utah bank had "concluded its negotiations with a New York law firm, delivered security interests to a New York trustee, and had no direct dealings with [the Pennsylvania bank] other than wire transfers of payments." The *Farino* court noted that *Dollar Savings* was decided before the Supreme Court's decision in *Burger King*, but nevertheless found the case distinguishable as, unlike the limited partners in *Farino*, the Utah bank in *Dollar Savings* had "never solicited business of any kind in Pennsylvania." *Farino*, 960 F.2d at 1226 (citation omitted).

Evaluated in light of these decisions, the relevant factors do not support the exercise of personal jurisdiction in Pennsylvania over New Life. By executing the Lease, New Life sought to finance its acquisition of computer equipment from a Virginia vendor for use at its Virginia church. New Life did not initiate contact, engage in negotiations, or have any direct contact with Cisco. Rather, New Life's dealings regarding the Lease were with ACI, which identified Cisco as a source of financing for the computer equipment, provided the Lease to New Life, and collected the executed Lease from New Life—all in Virginia. Although by signing the Lease, New Life agreed to repay Cisco at its Pennsylvania address, the agreement to make payments in Pennsylvania, without more, is not sufficient to support personal jurisdiction. *See Farino*, 960 F.2d at 1225 (noting the "[m]ere mailing of payments is not enough for jurisdiction" (quoting *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986)); *Fidelity Leasing*, 758 A.2d at 1212 (holding a nonresident's "agreement to make payments to a Pennsylvania company did not constitute sufficient minimum forum contacts to sustain personal jurisdiction"); *Keller*, 737 A.2d at 282 (suggesting that "[s]tanding alone, [a nonresident's] agreement to make loan repayments to

9

a Pennsylvania company might not constitute sufficient forum contacts to sustain personal jurisdiction"); *see also Savin v. Ranier*, 898 F.2d 304, 307 (2d Cir. 1990) ("[S]imply receiving financing from a Connecticut resident is tantamount to 'an individual's contract with an out-of-state party,' which '*alone* . . . [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'" (quoting *Burger King*, 471 U.S. at 478)); *MAC Funding Corp. v. Ne. Impressions, Inc.*, 215 F. Supp. 2d 978, 981-82 (N.D. Ill. 2002) (holding a New Jersey company that financed the purchase of a printing press through a lease agreement with an Illinois company was not subject to personal jurisdiction in Illinois where the defendant's only connection to Illinois was its obligation to submit lease payments there).[8]

Moreover, the Lease contains a New York choice of law clause which reflects the parties' consent to jurisdiction in the New York state and federal courts. Given the inclusion of this choice of law clause, New Life cannot be said to have "purposefully availed [itself] of the benefits and protections of [Pennsylvania's] laws." *Burger King*, 471 U.S. at 482 (giving weight to a Florida choice of law clause in analyzing whether there was personal jurisdiction over a Michigan resident in Florida). Similarly, while the consent to jurisdiction in New York is non-exclusive, the inclusion of such a provision undercuts DLL's suggestion the Lease gave New Life reason to anticipate it would be haled into court in Pennsylvania. In these circumstances, New Life has not purposefully

---

[8] The cases cited by DLL are not to the contrary. In *Packard Press Corp. v. Com Vu Corp.*, 584 F. Supp. 73 (E.D. Pa. 1984), a New York defendant sought out a Pennsylvania plaintiff to print a prospectus and then communicated with the printer in Pennsylvania about the prospectus. In *Law Office of Marvin Lundy v. Whitehaven S.F., LLC*, No. 10-4544, 2010 WL 4178643 (E.D. Pa. Oct. 22, 2010), an LLC in New York entered into contracts with a Pennsylvania resident and, allegedly, her Pennsylvania law firm pursuant to which the LLC advanced funds to the Pennsylvania resident in Pennsylvania and obtained a contingent interest in her personal injury claim, which was being litigated by the law firm in Pennsylvania state court. The contracts at issue in both cases thus had more substantial connections to Pennsylvania than the Lease at issue in this case.

directed its activities at Pennsylvania so as to be subject to personal jurisdiction in this Commonwealth.[9]

As an alternative to dismissal should personal jurisdiction over New Life be lacking, DLL asked this Court at oral argument to transfer this case to the U.S. District Court for the Southern District of New York pursuant to the consent to jurisdiction provision in the Lease. New Life objects to transfer on the ground that ACI is an indispensable party which may not be subject to personal jurisdiction in New York. Because it is unclear based on the existing record whether this case could have been brought in the Southern District of New York, or whether transfer to that court would be in the interest of justice, dismissal, rather than transfer, is appropriate. *See* 28 U.S.C. § 1631 (directing a court that lacks jurisdiction over an action to transfer the action "to any other such court in which the action . . . could have been brought at the time it was filed" if it is in the interest of

---

[9] Because this Court concludes it lacks personal jurisdiction over New Life in this case, it is not necessary to reach the merits. Had this Court determined New Life was subject to personal jurisdiction in Pennsylvania, however, it would have found in favor of New Life and against DLL. DLL alleges New Life breached the Addendum by failing to reimburse DLL for progress payments it made on New Life's behalf plus interest (or "progress rent"). The Addendum, however, was not admitted into evidence because DLL failed to properly authenticate it. DLL therefore failed to establish the existence of the contract it claims New Life breached, an essential element of its claim. *See JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010) (noting the existence of a contract is an essential element of a breach of contract claim); *cf. Commonwealth Fin. Sys., Inc. v. Smith*, 15 A.3d 492, 499-501 (Pa. Super. Ct. 2011) (affirming a trial court's defense verdict on a breach of contract claim where the plaintiff failed to establish the existence of the contract by not properly authenticating it at trial). Similarly, DLL failed to show a "clear and unambiguous promise" by New Life, as required to prove its claim for promissory estoppel. *Schwartz v. Miltz*, 77 A.D.3d 723, 724 (N.Y. App. Div. 2010) (noting the elements of a cause of action based on promissory estoppel include, *inter alia*, a clear and unambiguous promise on which the promisee reasonably and foreseeably relied). Insofar as DLL's promissory estoppel claim is based on promises contained in the Addendum or Lease, the Addendum, as noted, was not admitted, and the Lease, which was never accepted by DLL, does not address progress payments. Although New Life's Project Manager Kylisa Harris testified New Life agreed to pay for the computer equipment when it received the equipment, she also testified New Life never received any equipment, and DLL presented no evidence to the contrary.

justice to do so).

Accordingly, New Life's motion to dismiss for lack of personal jurisdiction is granted. An appropriate order follows.

BY THE COURT:


  /s/ Juan R. Sánchez
Juan R. Sánchez, J.